IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

PEGGY L. EDWARDS,

      Plaintiff,

v.                                 CASE NO. 2:04-cv-01179

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.


## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Peggy Lee Edwards (hereinafter referred to as "Claimant"), filed an application for DIB on April 4, 2003, alleging disability as of June 30, 1999, due to back and knee pain and stomach problems.  (Tr. at 50-52, 73.)  The claim was denied initially and upon reconsideration.  (Tr. at 32-36, 40-42.)  On November 4, 2003, Claimant requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. at 43.) The hearing was held on May 25, 2004, before the Honorable John T. Yeary. (Tr. at 308-65.) By decision dated June 25, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-24.) The ALJ's decision became the final decision of the Commissioner on September 9, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On November 1, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.    Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.    Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.    Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2004).  The Commissioner must show two things:  (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffers

3

from the severe impairments of borderline intellectual functioning
and a back disorder.  (Tr. at 17-18.)  At the third inquiry, the
ALJ concluded that Claimant's impairments do not meet or equal the
level of severity of any listing in Appendix 1.  (Tr. at 18.)  The
ALJ then found that Claimant has a residual functional capacity for
light work, reduced by nonexertional limitations.  (Tr. at 21.)  As
a result, Claimant cannot return to her past relevant work.  (Tr.
at 22.)   Nevertheless, the ALJ concluded that Claimant could
perform jobs such as deli clerk and hand packager, which exist in
significant numbers in the national economy.  (Tr. at 23.)  On this
basis, benefits were denied.  (Tr. at 23.)

<u>Scope of Review</u>

    The sole issue before this court is whether the final decision
of the Commissioner denying the claim is supported by substantial
evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was
defined as

> "evidence which a reasoning mind would accept
> as  sufficient  to  support  a  particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting
<u>Laws  v.  Cellebreze</u>,  368  F.2d  640,  642  (4th  Cir.  1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  <u>Hays v. Sullivan</u>, 907 F.2d

4

1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."   Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was fifty-four years old at the time of the administrative hearing.   (Tr. at 313.)   Claimant completed the eighth grade.   (Tr. at 316.)   In the past, she worked as a waitress and bartender.   (Tr. at 317-19.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes from the Pain Management Program at Charleston Area Medical Center dated prior to Claimant's alleged onset date of June 30, 1999.   On January 26, 1996, Claimant gave a history of low back pain and right lower extremity pain. Timothy W. Nelson, M.D. noted that Claimant's physician, William G. Sale, M.D., believed that she may have "lumbar disc with an L/5 radiculopathy." (Tr. at 148.)   Dr. Sale wanted Claimant to receive a lumbar epidural steroid injection before undergoing an MRI.   (Tr. at 148.)   Dr. Nelson prescribed Lorcet.   (Tr. at 148.)   Claimant

underwent injections. (Tr. at 137, 142.) On December 3, 1997, another physician, J.K. Lilly, III M.D., noted that Claimant fell at work and aggravated a previous lumbosacral radiculitis. Dr. Lilly found "no evidence of true large fiber problem, but her pain pictogram and her complaints certainly warrant an L/4-5 radiculitis on the right." (Tr. at 134.) Dr. Lilly administered a bracketing steroid epidural. (Tr. at 134.) On January 5, 1998, Dr. Lilly noted that Claimant's pain "has diminished to approximately 40 percent of its previous level, and her activities of daily living have resumed." (Tr. at 131.) Claimant continued to have pain, and Dr. Lilly administered a second bracketing epidural. He also prescribed Lortab. (Tr. at 131.)

The record includes treatment notes dated January 12, 1996, through April 27, 1999, from Dr. Sale. Claimant reported a back injury on November 23, 1995, when she lifted a window air conditioning unit. Claimant walked with a limp. X-rays revealed some narrowing at L5-S1. Dr. Sale opined that Claimant had a herniated nucleus pulposis with L5 radiculopathy. Dr. Sale prescribed Tylox and referred her to the pain clinic. (Tr. at 154.) On February 13, 1996, Dr. Sale noted that Claimant had two epidural injections and was feeling somewhat better. Dr. Sale told Claimant to increase her activities. On March 22, 1996, Dr. Sale noted Claimant was somewhat better. On December 2, 1997, Dr. Sale noted that Claimant was "just doing beautifully, working every day

and not having any trouble with her back or legs," but then reinjured herself on November 7, 1997. (Tr. at 153.) Dr. Sale diagnosed recurrent herniated nucleus pulposis with L5 radicular pain on the right side. Dr. Sale recommended epidural injections. (Tr. at 152.) On December 9, 1997, Dr. Sale noted that Claimant was doing considerably better. Claimant continued to work throughout this period and continued to improve, as noted by Dr. Sale on January 6, 1998. (Tr. at 152.) Later in 1998, Claimant reported a reinjury of her back. Dr. Sale did not feel epidural injections were necessary. (Tr. at 151.) On January 26, 1999, Claimant called Dr. Sale asking for Lortab and Voltaren, and Dr. Sale told Claimant she did not need Lortab because she had purely back pain with no leg pain. (Tr. at 150.) On April 27, 1999, Claimant reported morning stiffness and pain after working. Claimant did not have any leg pain. Extension was uncomfortable with some pain referred to the right sacroiliac area. Left lateral bending was normal. There was increased pain with right lateral bending. The sciatic stretch was negative. Claimant had "good strong EHL dorsiflexion bilaterally." (Tr. at 150.) Dr. Sale referred Claimant to physical therapy. (Tr. at 150.)

On August 25, 1997, Claimant underwent incisional hernia repair. (Tr. at 162-65.)

The record includes treatment notes from William Jeffrey, M.D. dated June 25, 2001, to December 11, 2002. (Tr. at 170-83.) On

November 20, 2001, Claimant reported injuring her back when she picked up a bag of trash.  There was no tingling or numbness.  (Tr. at 177.)  Straight leg raising was negative.  Dr. Jeffrey diagnosed low back pain and a urinary tract infection.  (Tr. at 176.)  On December 3, 2001, Claimant's back was better.  (Tr. at 175.)  On April 11, 2002, Claimant had epigastric pain.  (Tr. at 173.)  The remainder of the evidence from Dr. Jeffrey consists of telephone contacts wherein Claimant requested refills for her blood pressure medication, Toprol, and Nexium.  (Tr. at 170-72, 174, 177.)

On May 27, 2003, Claimant reported to St. Francis Hospital with complaints of right flank and back pain, chills, fever and weakness.  (Tr. at 186.)  Claimant was diagnosed with acute pyelonephritis.  (Tr. at 187.)

Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service on July 8, 2003.  Dr. Bhirud found no neurological deficit in the lower extremities.  Claimant had moderate lumbar tenderness.  Forward flexion was 60 degrees.  (Tr. at 194.)  Straight leg raising was positive at 70 degrees on both sides.  (Tr. at 193.)  Dr. Bhirud reported that Claimant had a large abdominal hernia in the upper abdomen.  Claimant's blood pressure was elevated at the time of examination.  (Tr. at 194.)  X-rays of Claimant's lumbar spine on June 25, 2003, showed degenerative changes at L5-S1.  (Tr. at 196.)

On July 21, 2003, a State agency medical source completed a

8

Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light work, reduced by nonexertional limitations.  (Tr. at 198-205.)

On October 10, 2003, a State agency medical source completed a Psychiatric Review Technique and opined that there was insufficient evidence from which to render an opinion about Claimant's mental impairments.  (Tr. at 207-20.)

A second State agency medical source completed a Physical Residual Functional Capacity Assessment on October 29, 2003, and opined that Claimant was limited to light work, reduced by nonexertional limitations.  (Tr. at 222-29.)

On April 17, 2004, John R. Atkinson, Jr., M.A. examined Claimant at the request of her counsel.  Claimant reported she had never been treated for any kind of mental or emotional problem. (Tr. at 233.)  On the WAIS-III, Claimant attained a verbal IQ score of 75, a performance IQ score of 72 and a full scale IQ score of 71.  (Tr. at 235.)  Claimant's affect was labile at times with crying.  Claimant's insight was poor, and her judgment moderately impaired.  Claimant's persistence was fair and her pace average. Social functioning was within normal limits.  Claimant's immediate history was within normal limits, while her recent memory was moderately impaired.  (Tr. at 236-37.)  Mr. Atkinson diagnosed depressive disorder, not otherwise specified and generalized anxiety disorder on Axis I and borderline intellectual functioning

9

on Axis II.  He rated Claimant's GAF at 60.  (Tr. at 238.)

Mr. Atkinson completed a Psychiatric Review Technique form on April 17, 2004, and opined that Claimant had extreme restriction in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence and pace and no repeated episodes of decompensation. (Tr. at 240-53.)

Mr. Atkinson also completed a Mental Impairment Questionnaire RFC on April 17, 2004.  He opined that Claimant was markedly to moderately limited in several areas.  (Tr. at 254-56.)

The record includes additional evidence from Dr. Jeffrey, including a prescription on March 9, 2004, for french catheters because of incontinence.  (Tr. at 257.)

The record includes treatment notes from Tony C. Majestro, M.D., who treated Claimant for left knee pain beginning in 1993. Claimant underwent a left arthroscopic subtotal medial meniscectomy, patella shaving and shaving of the lateral tibial plateau in 1993.  Claimant improved, but reported persistent effusion.  Thereafter, Claimant cancelled her follow-up appointments.  (Tr. at 283.)

The record includes treatment notes from Thomas Dickie, M.D., a dermatologist, dated May 29, 2002, through January 17, 2003. (Tr. at 284-91.)

The record includes additional treatment notes from Dr.

Jeffrey dated May 27, 2003, through May 3, 2004. (Tr. at 292-301.)
On May 27, 2003, Claimant reported complaints consistent with
cholecystitis and was admitted to the hospital. (Tr. at 301.) On
June 5, 2003, Claimant had improved. (Tr. at 300.) In a treatment
note dated June 19, 2003, Claimant reported that her blood pressure
at home had been high, but that she had been off of her Toprol.
Claimant's blood pressure was 124/80. (Tr. at 298.) On August 29,
2003, Claimant reported that she restarted her blood pressure
medication. Her blood pressure was 120/82. (Tr. at 297.) On
October 14, 2003, Claimant's blood pressure was 102/62. Claimant
reported severe menopausal symptoms. Dr. Jeffrey diagnosed
menopause, hypertension and recurrent urinary tract infection.
(Tr. at 296.) On February 16, 2004, Claimant reported she had a
urinary tract infection two weeks ago. Claimant's blood pressure
was 132/80. Dr. Jeffrey noted Claimant's diagnoses, including
sinusitis, nausea and back pain, among others. (Tr. at 294.) On
March 9, 2004, Claimant requested catheter refills. (Tr. at 293.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because (1) the ALJ failed to
find certain impairments severe; (2) the ALJ erred in his pain and
credibility analysis; and (3) the ALJ failed to provide the
vocational expert with a comprehensive hypothetical question.
(Pl.'s Br. at 3-11.)

11

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant was not disabled prior to her date last insured; (2) the ALJ did not err in finding certain of Claimant's impairments were not severe; (3) the ALJ's pain and credibility findings are supported by substantial evidence; and (4) the ALJ's hypothetical question included those impairments supported by the record. (Def.'s Br. at 5-9.)

Claimant first argues that the ALJ erred in failing to find severe, her knee problems, abdominal hernia, high blood pressure, bladder problems, a mood disorder, irritable bowel syndrome and skin conditions. (Pl.'s Br. at 4-7.)

Under current law, a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2004); see also 20 C.F.R. § 404.1521(a) (2004); Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (recognizing change in severity standard). "Basic work activities" refer to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2004). Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work

> situations;  and
>       (6) Dealing with changes in a routine
> work setting.

Id.

The court proposes that the presiding District Judge find that the ALJ did not err in failing to find Claimant's knee problems, abdominal hernia, high blood pressure, bladder problems, mood disorder, irritable bowel syndrome and skin conditions to be severe impairments.   The ALJ explains in detail in his decision, his reasons for finding that Claimant's knee impairment, abdominal hernia, hypertension, bladder problems and anxiety are not severe impairments. (Tr. at 17.)

Regarding her knee impairment, Claimant cites to no evidence supporting a finding that this impairment is indeed severe, other than her testimony at the administrative hearing. (Pl.'s Br. at 7.)   However, as the ALJ noted in his decision, Claimant had undergone surgery on the left knee in 1993, prior to her onset date, and thereafter, the knee healed nicely and Claimant did not keep her followup appointments.  The ALJ further acknowledged that during a consultative examination, Dr. Bhirud found tenderness in the knees bilaterally, but that the range of motion in Claimant's knees was normal, as was her gait.   The ALJ thus reasonably concluded that "in the absence of any subsequent medical records showing complaints of or treatment for related symptoms, it is reasonable to conclude that this condition has not resulted in any

13

limitations on the claimant's ability to do basic work activities ...." (Tr. at 16.)

Claimant's reliance on her testimony alone as to her knee impairment ignores the fact that she can only be found disabled if her impairments result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms ...." 20 C.F.R. § 404.1508 (2004). With respect to Claimant's knee impairment, Claimant has not received ongoing medical treatment for this condition since her surgery in 1993 and, substantial evidence of record simply does not support a finding that this impairment was severe after her alleged onset in June of 1999.

Nor does substantial evidence of record support a finding that Claimant's abdominal hernia is severe. Claimant underwent hernia repair in 1997, prior to her onset date, and the incision healed nicely. After her alleged onset, Dr. Bhirud noted a large abdominal hernia during an examination on June 25, 2003, and, as a result, the ALJ concluded that Claimant had established the existence of a medically determinable impairment. However, in the absence of any medical records since then showing complaints of or treatment for symptoms related to Claimant's hernia, particularly

14

since Claimant had health insurance through her husband's employer since March of 2001, the ALJ concluded that this impairment did not result in any limitations in Claimant's ability to work.  (Tr. at 16.)  The ALJ's finding related to Claimant's abdominal hernia is reasonable and supported by substantial evidence.

The ALJ found that Claimant's high blood pressure was a medically determinable impairment, but not one that was severe because it was managed by medication.  Claimant's argument that the ALJ "found this impairment to [be] controlled and this non-severe based on one note from Dr. Jeffrey which found her blood pressure to be 'ok'" ignores the other substantial evidence cited by the ALJ in support of his finding related to Claimant's blood pressure. (Tr. at 16.)  While Dr. Bhirud found Claimant's blood pressure elevated (Tr. at 192), substantial evidence of record from Dr. Jeffrey supports a finding that Claimant's blood pressure was managed with medication (Tr. at 173, 174, 175, 177, 294, 296, 297, 298, 300, 301).

Substantial evidence supports the ALJ's determination that Claimant's bladder problems are not severe.  In his decision, the ALJ acknowledged that Dr. Jeffrey diagnosed a urinary tract infection on November 20, 2001, that on October 4, 2003, Dr. Jeffrey indicated a diagnosis of recurrent urinary tract infection and that Dr. Jeffrey prescribed a french catheter.  (Tr. at 17, 176, 257, 296.)  The ALJ further acknowledged Claimant's testimony

15

that she uses a catheter to empty her bladder.  (Tr. at 17.)
Claimant testified at the administrative hearing that she uses the
catheter four to seven times per day and that it takes fifteen to
twenty minutes each time.  (Tr. at 346.)  The ALJ concluded that
this "condition is managed and has not resulted in any significant
limitation in her ability to do basic work activities; and is,
therefore, a non-severe impairment."  (Tr. at 17.)

     The ALJ's findings related to Claimant's bladder problems are
supported by substantial evidence.  Claimant does manage her
incontinence by performing self-catheterization.  There is no
medical evidence of record supporting a finding that this condition
results in significant work-related limitations.

     Substantial evidence supports the ALJ's finding that Claimant
does not suffer from a severe mental impairment other than
borderline intellectual functioning.  The ALJ acknowledged the
evidence of record from Mr. Atkinson diagnosing generalized anxiety
disorder and a depressive disorder, but determined that these
impairments were not severe.  (Tr. at 17.)  In evaluating
Claimant's subjective complaints, the ALJ reasoned that Claimant
"had never received mental health treatment, nor been prescribed
psychotropic medication.  (Exhibit 12F).  She testified that she
has never been treated for a mental condition nor prescribed
psychotropic medication, which diminishes the credibility of
Exhibit 12F [Mr. Atkinson's report]."  (Tr. at 19.)  Claimant's

lack of ongoing treatment or use of medication for a mental condition suggests that any mental impairments she may have, aside from borderline intellectual functioning, do not impact her ability to work. In any event, the ALJ reduced Claimant's residual functional capacity by a need for simple, repetitive and unskilled work, limitations that more than account for any limitations Claimant may have related to these impairments.

Finally, Claimant asserts that the ALJ failed to even consider her complaints of irritable bowel syndrome and skin conditions. Claimant has not cited medical evidence of record, which would support a finding that these impairments result in work-related limitations.

Based on the above, the court proposes that the presiding District Judge find that the ALJ did not err in failing to find certain impairments nonsevere.

Claimant next argues that the ALJ improperly discredited Claimant's subjective complaints of pain. (Pl.'s Br. at 7-10.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and social security ruling ("SSR") and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2004); SSR 96-7p, 1996 WL 374186 (July 2, 1996); <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ made the threshold finding that Claimant produced evidence of impairments that could

reasonably be expected to cause her alleged symptoms.  (Tr. at 19.)
The ALJ proceeded to the second prong of the pain analysis, and his
decision contains an adequate consideration of Claimant's daily
activities, the location, duration, frequency, and intensity of
Claimant's pain, precipitating and aggravating factors and
Claimant's medication.  (Tr. at 19-20.)  Furthermore, as is
required by Social Security Ruling ("SSR") 96-8p, the ALJ
considered the "limitations and restrictions imposed by all of an
individual's impairments, even those that are not 'severe',"
including Claimant's alleged mental impairments, bladder and knee
problems.  (Tr. at 19-20); SSR 96-8p, 1996 WL 362207, *34477 (July
2, 1996).

     The ALJ determined that Claimant was not entirely credible.
The ALJ noted evidence of record from Dr. Sale that Claimant had a
herniated nucleus pulposus with L5 radiculopathy, but also noted
there is no MRI or x-ray evidence of a herniated nucleus pulposus.
Thereafter, Claimant reported to Dr. Sale that she was much better
and returned to work.  (Tr. at 19.)  The ALJ later noted that
Claimant reported to Dr. Bhirud on June 25, 2003, that she does not
see any doctor for her backache.  (Tr. at 21.)  The ALJ further
explained that Claimant's "pain is not consistent with the zero to
minimal complaints to [her] treating physician, no pain clinic,
etc." (Tr. at 20.) The ALJ noted that Claimant "completed the one-
hour hearing without distress."  (Tr. at 20.)

18

The ALJ noted that Claimant received unemployment benefits through July 13, 2002, and thus, "held her self out as able to work through that date." (Tr. at 20.) The ALJ cited to "significant inconsistencies" regarding Claimant's reported activities of daily living. (Tr. at 20.) On one occasion, Claimant reported receiving visits from her sister and friends, and on another occasion, reported that she has no friends. Claimant reported preparing simple meals and also stated that her sister prepares her lunch and her husband prepares dinner. (Tr. at 20.) The ALJ noted that Claimant denied interpersonal problems on the job during Mr. Atkinson's examination, but on a function report, Claimant's sister stated that Claimant was fired once because she could not get along with her boss. (Tr. at 21.)

Claimant takes issue with the ALJ's finding related to Claimant's receipt of unemployment benefits because "this is not a lawful basis to deny credibility." (Pl.'s Br. at 9.) In Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998), the court held that "acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability" but, "the negative impact cannot be uniformly or automatically applied in every case." Where "there is no evidence to detract from the claimant's credibility, the negative inference is not sufficient, of itself, to negate the claimant's credibility." Id. In addition to Claimant's receipt of

19

unemployment benefits, the ALJ cited a number of additional grounds for rejecting Claimant's credibility.   While some grounds are stronger than others, on the whole, the ALJ's reasons are adequately explained and supported by substantial evidence.

Claimant argues that the ALJ's finding that she completed the hearing "without distress" is "patently false" because counsel noted during the hearing that Claimant was constantly shifting, moving, bracing herself and changing positions to deal with pain. (Pl.'s Br. at 9.)   Claimant's counsel stated mid way through the one hour and ten minute hearing that Claimant had been shifting around in her chair throughout the hearing and bracing her arms on the chair to alleviate her pain, and that she had stood up twice during the hearing.   (Tr. at 341.)   While Claimant apparently had some discomfort during the hearing, the court is mindful of the fact that great weight should be given to the ALJ's findings where the credibility of witnesses is involved.   Laws v. Celebrezze, 368 F.2d 640, 644 (4th Cir. 1966).   The ALJ's pain and credibility analysis is, overall, supported by substantial evidence, and, the court cannot recommend that the ALJ's statement in this regard makes the ALJ's pain and credibility finding unsupported by substantial evidence.   This finding is one of a number of reasons why the ALJ found Claimant not completely credible. The ALJ was at the administrative hearing and, despite Claimant's counsel's statements at the hearing, it could have been the ALJ's impression

20

that Claimant completed the hearing "without distress."  In this case where the ALJ's pain and credibility analysis is otherwise supported by substantial evidence, the court cannot conclude that these particular findings were in error.

Finally, Claimant asserts that the ALJ erred in rejecting Claimant's subjective complaints of pain because the State agency medical source stated that most of Claimant's symptoms are supported by the physical findings.  (Tr. at 203.)  The ALJ adopted all of the limitations opined by this State agency medical source, who opined that with her limitations, Claimant was limited to light level work further reduced by nonexertional limitations.  (Tr. at 198-205.)  Furthermore, among other factors, the fact remains that while Claimant experienced back problems and other impairments, many prior to her alleged onset date, the objective evidence of record related to the time after her alleged onset does not indicate the presence of disabling impairments.

Thus, the court proposes that the presiding District Judge find that substantial evidence supports the ALJ's pain and credibility analysis.

Claimant's final argument is that the ALJ failed to include all of Claimant's limitations in the hypothetical question.  In particular, the ALJ should have adopted the vocational expert's response to a hypothetical question that included a sit/stand option and a need to miss work three days per month.  (Pl.'s Br. at

21

10-11.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments.  Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989).  "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity."  Id. at 51.  Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.  See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).  Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe.  Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

At the administrative hearing, the ALJ posed a hypothetical question that included the limitations of light level work, reduced by an occasional ability to climb, balance, stoop, kneel, crouch and crawl, a need to avoid concentrated exposure to extreme cold and vibration, a need to avoid even moderate exposure to extreme heat, mild to moderate pain, and an ability to perform work involving simple, repetitive tasks.  (Tr. at 357-59.)  In response,

22

the vocational expert identified the jobs of deli clerk and hand packager. (Tr. at 358.)

Claimant's counsel posed a hypothetical question that included a sit/stand option in addition to the limitations identified by the ALJ. In response, the vocational expert eliminated all jobs. (Tr. at 361.) In addition, Claimant's counsel included a limitation that if Claimant's back complaints and testimony about spending time on the couch were given full credibility, the jobs identified would be eliminated because most employers would permit no more than three absences per month. (Tr. at 362.)

The ALJ's hypothetical question included those limitations supported by substantial evidence of record cited above. Furthermore, the ALJ did not err in failing to adopt the vocational expert's response to the hypothetical question including the limitations of a sit/stand option or absences from work due to back pain. The objective and substantial evidence of record, particularly related to Claimant's back pain, simply does not support such limitations, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

23

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

____November 1, 2005____
Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

24